IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENISE KOHLER,

                              Plaintiff,                        Case No. 3:04 CV 7148

        -vs-

                                                        MEMORANDUM   OPINION

CITY OF WAPAKONETA, et al.,

                              Defendant.

KATZ, J.

      This matter is before the Court on Defendant David L. Harrison, Sr.'s ("Harrison") Motion for Summary Judgment (Doc. No. 38), to which Plaintiff has responded (Doc. No. 59) and Harrison has Replied (Doc. No. 77). Also before the Court is the Motion for Summary Judgment of Defendants City of Wapakoneta, Ohio, ("the City") Mayor Donald R. Wittwer, ("Wittwer") and Safety Director Rex Katterheinrich ("Katterheinrich") (Doc. No. 46), to which Plaintiff has Responded (Doc. No. 67), and Defendants have Replied (Doc. No. 78). The Court has jurisdiction under 28 U.S.C. §§ 1331 & 1367. For the following reasons, Harrison's motion is granted in part and denied in part. The Motion of the City, Wittwer, and Katterheinrich is granted.

## BACKGROUND

      Plaintiff Denise Kohler ("Kohler") at all relevant times was, and is, a dispatcher at the City of Wapakoneta Police Department. Defendant Harrison was Wapakoneta's Chief of Police from 1998 until

May 2, 2002. Defendant Wittwer was and is the mayor of Wapakoneta, and Defendant Katterheinrich was and is the City's Safety Director.

Since June 21, 2000, the City has had a sexual harassment policy in place requiring it to "take preventive and immediate remedial steps to stop sexual harassment from occurring," and requiring department heads to discuss the policy with all employees. (Doc. No. 67, pp. 9-10). Harrison never discussed the policy with police department employees. Likewise, the police department itself had a sexual harassment policy that Harrison himself developed in conjunction with outside consultants, but that he likewise did not discuss with his employees.

Kohler's allegations relevant to her claims are that: (1) in May of 1997, before he was Chief of Police, Harrison showed her a pornographic picture on a computer; (2) in June of 1997, she came to work and found another pornographic picture <u>anonymously</u> left on her computer screen; (3) in early 2002, Harrison informed her that one could purchase used women's underwear on the Internet; (4) in February and March of 2002, Harrison sent four offensive e-mails[1]; (5) on May 2, 2002, she discovered

---

[1]
The first e-mail, sent on February 20, 2002, purported to explain why sales of "Speedo" bathing suits were down and warned readers that it contained a graphic illustration that was "not for the faint of heart," which, when readers scrolled to the image, depicted an overweight man in a "Speedo"-style bathing suit that failed to cover all it was designed to cover. The second e-mail, sent on March 4, 2002, contained a photograph of a man and a woman in bathing suits walking on a beach and holding hands, with Kohler's face and that of a male police department employee superimposed over the faces of the strollers, and the caption "Okay. . . Does [sic] Marcia & Brad [the spouses of Kohler and the male employee] know about this? Just kidding . . . Playing with my new toy . . .". (Doc. No. 62, ex. 3) (ellipses in original). The third e-mail was sent on the same day to a distribution list called "police@wapakoneta.net" and depicted a line-up of women in bathing suits with faces of female employees, including Kohler, superimposed on the women's bodies. The fourth e-mail, also sent on March 4, 2002, depicted three shirtless men in bow ties and french cuffs, with the faces of Harrison and two other male employees superimposed on the bodies.

2

a running tape recorder behind a trash can in a toilet stall in the Police Department women's room, left there by Harrison; and (6) also on May 2, 2002, Harrison e-mailed to numerous people an old, official photograph of Kohler in uniform. Kohler did not complain about the 1997 and 1998 comments or e-mails, and testified that she was able to continue to perform her job duties during those times.

When Kohler discovered the tape recorder on May 2, 2002, while using the restroom, she was first concerned that a video camera might also be present. She eventually left the bathroom and took the tape recorder to a detective. They listened to the tape and discovered that it contained only sounds of water running, doors opening, and other mechanical sounds, but no voices or "personal noises." Nevertheless, Kohler was noticeably upset and shaken by the incident. Harrison observed Kohler and the detective with the tape recorder and was then seen packing up belongings in his office.

Kohler and the detective informed Katterheinrich and eventually Wittwer about the discovery of the tape recorder and their suspicion that Harrison was responsible. Katterheinrich and Wittwer made the determination to place Harrison on administrative leave and to refer the matter to the state Bureau of Criminal Investigation ("BCI") for investigation, rather than investigate it internally. When they called Harrison into a meeting late in the day on May 2 to inform him of this, he tendered a letter of retirement, which they accepted. Harrison left his post that day, using sick leave to reach his twenty-five year retirement mark several months later. The City extended Harrison's sick leave by several weeks so he could retire in July 2002 with twenty-five years service. Upon Harrison's abrupt retirement, Wittwer stated in the local newspaper that Harrison had "served the city well," and had been a good officer and an "asset to the city," and, later, that Wittwer had no basis to say there was any wrongdoing on Harrison's part.

3

Before Harrison left the building on May 2, 2002, he e-mailed to a large number of people, including Kohler, an old photograph of Kohler in uniform that had previously hung in the hallway at the police station and that Kohler had informed Harrison she did not like.

BCI initiated an investigation, the results of which Kohler sought out, and which indicated that Harrison had secretly viewed pornography on his office computer and had once photographed himself masturbating in the women's locker room when no women were present in the building. As part of the investigation, BCI asked Kohler to view several photographs of women sitting on toilets to determine whether any were of her or her daughter, who had visited her at the police department. None were.

After the May 2, 2002 events and the initiation of the BCI investigation, Kohler had dreams involving Harrison chasing her. She saw a psychologist in July of 2002, whom she still sees intermittently, and was prescribed Lorzepam for stress and anxiety in September of 2002. She now occasionally takes Benadryl to help her sleep. Kohler testified that throughout the incidents and investigation, she has been able to continue doing her job. She wrote on her July 29, 2003 performance review "I love my job. Thanks for everything." (Doc. No. 41, p. 311).

Kohler filed a charge of discrimination with the EEOC on August 20, 2003. She received a right-to-sue letter on January 11, 2004, and filed this lawsuit on March 23, 2004. Kohler's Amended Complaint sets forth eight counts: Count One, a claim of hostile-environment sexual harassment in violation of the equal protection clause, brought under 42 U.S.C. § 1983; Count Two, a similar claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.; Count Three, a claim that Harrison invaded her privacy in violation of the substantive due process clause, brought under § 1983; Count Four, a claim that Defendants violated her rights under the Family and Medical Leave Act

4

for an absence in July of 2003; Count Five, a sexual harassment claim brought under Ohio Revised Code

§ 4112.02; Count Six, an Ohio common-law claim for intentional infliction of emotional distress; Count

Seven, an Ohio common-law claim for invasion of privacy; and Count Eight, an Ohio common-law claim

for negligent supervision and retention. All claims except the Title VII claim, which Kohler asserts against

the City only, and Count Eight, against all Defendants save Harrison, are brought against all Defendants.

### DISCUSSION

Defendants have moved for summary judgment on all of Kohler's claims.

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion,

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265

(1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or

more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden,

the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting*

FED. R. CIV. P. 56(e)).

5

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams  v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or

6

whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

*B. Conceded Claims*

Kohler concedes in her Response that she does not challenge the City's, Wittwer's, and Katterheinrich's motion for summary judgment on her Count Four FMLA claim and her Count Eight Negligent Supervision claim. The Court will therefore grant the motion as to those claims.

*C. Intentional Tort Claims*

In Counts Six and Seven of her Complaint, Kohler sets forth Ohio state-law claims against all defendants for intentional infliction of emotional distress and invasion of privacy. Mayor Wittwer, Director Katterheinrich, and the City are immune from Kohler's intentional tort claims. However, because Kohler has presented evidence creating a genuine issue of fact on the elements, Harrison is not entitled to summary judgment on those claims.

1. Immunity of the Mayor and Safety Director

Mayor Wittwer and Director Katterheinrich claim they are immune from Kohler's state law invasion of privacy and intentional infliction of emotional distress claims under Ohio Revised Code § 2744.03(A)(6). That section provides immunity to a city employee from "a civil action brought . . . to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function," unless the employee acted outside the scope of his employment, acted "with malicious purpose, in bad faith, or in a wanton or reckless manner," or unless "liability is expressly imposed upon the employee by a section of the Revised Code." Ohio Rev. Code. § 2744.03(A)(6)(a)-(c).

7

Wittwer and Katterheinrich argue that when they learned of Kohler's allegations against Harrison, they referred the matter to BCI for an investigation and accepted Harrison's letter of retirement, and that nothing in the record shows that they acted outside the scope of their employment or acted maliciously or in bad faith. Moreover, as they point out, Ohio Revised Code § 4112.02(A) does not expressly impose liability on them. *See Howard v. City of Beavercreek*, 276 F.3d 802, 807-08 (6th Cir. 2002).

Plaintiff fails to address Wittwer's and Katterheinrich's arguments in her response. She identifies no facts showing that there is a genuine issue for trial. The law and facts as articulated by Wittwer and Katterheinrich lead the Court to conclude that they are immune from Kohler's state law claims. Their motion for summary judgment is therefore granted as to Counts Five, Six, and Seven.

2. Immunity of the City

The grant of immunity from civil lawsuits that Ohio Revised Code § 2744.02(A) provides to political subdivisions like the City applies to Kohler's Count Six invasion of privacy claim and her Count Seven intentional infliction of emotional distress claim because neither the exceptions of § 2744.02(B) nor the exemptions of § 2744.09 preclude immunity.

The exceptions in § 2744.02(B) for negligence in the operation of a motor vehicle, for negligence in the performance of acts by city employees relating to a proprietary function, for failure to maintain the streets free of nuisance, for negligence of city employees occurring on city grounds or in city buildings, and "when liability is expressly imposed on the political subdivision by a section of the Revised Code," do not apply in this case. *See* Ohio Rev. Code § 2744.02(B)(1)-(5); *Wilson v. Stark County Dep't of Human Servs*, 639 N.E.2d 105, 107 (Ohio 1994) ("There are no exceptions to immunity for the

8

intentional torts of fraud and intentional infliction of emotional distress as alleged in this case."). As in *Wilson*, Kohler's claims for invasion of privacy or intentional infliction of emotional distress are intentional torts, not claims based on negligence. Liability for neither claim is expressly imposed on political subdivisions by any statute. Plaintiff does not challenge the City's contention that no § 2744.02(B) exception to immunity applies, and the Court finds that none does.

The exemptions in § 2744.09 likewise do not apply to Plaintiff's intentional tort claims. That section provides, in pertinent part, that Chapter 2744's political subdivision immunity shall not apply to civil actions by an employee of a political subdivision against her employer "relative to any matter that arises out of the employment relationship between the employee and the political subdivision," or "relative to wages, hours, conditions, or other terms of his employment." Ohio Rev. Code § 2744.09(B)-(C).

In the workers' compensation context, the Ohio Supreme Court has held that intentional torts committed by an employer against an employee do not arise out of the victim's employment and always occur outside the employment relationship. *Brady v. Safety-Kleen Corp.*, 576 N.E.2d 722, 729-30 (Ohio 1991). The Ohio Supreme Court, in *Brady*, quoted with approval Justice Douglas's dissent in *Taylor v. Academy Iron & Metal Co.*, which explained that:

> Injuries resulting from an employer's intentional torts, even though committed at the workplace . . . *are totally unrelated to the fact of employment*. When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim.

*Taylor v. Acad. Iron & Metal Co.*, 522 N.E.2d 464, 476 (Ohio 1988) (Douglas, J., dissenting). The Ohio Supreme Court has not expressly applied the holding of *Brady* in the municipal immunity context. This Court normally applies the law of Ohio "in accordance with the then controlling

9

decision of the highest state court." *United States v. Anderson County, Tenn.*, 761 F.2d 1169, 1173 (6th Cir. 1985); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct 817, 822, 82 L. Ed. 1188 (1938). Where the Ohio Supreme Court has not ruled, this Court must attempt to ascertain from all the available data, including relevant dicta in related cases, Ohio Supreme Court rulings in analogous cases, and the rulings of Ohio appellate courts, how the Ohio Supreme Court would decide the issue. *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985). "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

The weight of Ohio Appellate authority holds that *Brady* applies in the immunity arena and that § 2744.09(B) and (C) do not exempt intentional tort claims from municipal immunity. *E.g.*, *Terry v. Ottawa County Bd. Of MRDD*, 783 N.E.2d 959, 964-65 (Ohio 6th Dist. Ct. App. 2002); *Chase v. Brooklyn City Sch. Dist.*, 749 N.E.2d 798, 806 (Ohio 8th Dist. Ct. App. 2001); *Engleman v. Cincinnati Bd. Of Educ.*, No. C-000597, 2001 Ohio App. LEXIS 2728, at *12-15 (1st Dist. June 22, 2001); *Abdalla v. Olexia*, No. 97-JE-43, 1999 Ohio App. LEXIS 4806, at *28-30 (7th Dist. Oct. 6, 1999); *Ventura v. City of Independence*, No. 72526, 1998 Ohio App. LEXIS 2093, at *20-23 (8th Dist. May 7, 1998); *Ellithorp v. Barberton City Sch. Dist. Bd. Of Educ.*, No. 18029, 1997 Ohio App. LEXIS 3053, at *8 (9th Dist. July 9, 1997).

Though Kohler cites to two Ohio appellate cases holding that, under § 2744.09, a municipality is *not* immune to an employer intentional tort, both fail to mention *Brady*. *Davis v. City of Cleveland*, No. 83665, 2004 Ohio App. LEXIS 6038, at *17-18 (8th Dist. Dec. 9, 2004); *Marcum v. Rice*, No.

10

98AP-717, 1999 Ohio App. LEXIS 3365, at *19-22 (10th Dist. July 20, 1999). Moreover, the court in *Marcum* found municipalities not immune where the plaintiff alleged malfeasance by plaintiffs in carrying out official duties, but immune from intentional torts arising out of a "solely personal transaction." 1999 Ohio App. LEXIS 3365 at *21.

The Court agrees with the Ohio Appellate Court's recent determination that the Ohio Supreme Court's holding in *Penn Traffic Co. v. AIU Ins. Co.*, 790 N.E.2d 1199, 1205 (Ohio 2003) does not overrule *Brady*. *Thayer v. W. Carrollton Bd. Of Educ.*, No. 20063, 2004 Ohio App. LEXIS 3571, at *8 (2d Dist. July 23, 2004). *Penn Traffic* held that while "an employer's intentional tort occurs outside the employment relationship," "an injury that is the product of an employer's intentional tort is one that also 'arises out of and in the course of' employment" for the purposes of a private insurance policy. 790 N.E.2d at 1205. As *Thayer* explained, the Ohio Supreme Court "took care to specifically limit its holding in *Penn Traffic* to situations involving the applicability of recovery under a private insurance policy. Therefore, *Brady* . . . remains good law." 2004 Ohio App. LEXIS 3571, at *8.

The Court determines, on the reasoning of *Brady* and the weight of Ohio appellate precedent applying it in the immunity context, that the Ohio Supreme Court would conclude that § 2744.09 does not exclude employer intentional tort claims from political subdivision immunity. The Court is aware that some have noted the seeming "irony in using the *Brady* decision, which sought to supplement an injured employee's right to recovery in the worker's compensation context, to extinguish an injured employee's right to recovery where the defendant is a political subdivision." *See Engleman*, 2001 Ohio App. LEXIS 2728 at *14. However, the Court's conclusion today supports "the public policy underlying the enactment of R.C. Chapter 2744[, which] is the preservation of the financial soundness of [Ohio's]

11

political subdivisions." *Terry*, 783 N.E.2d at 965. The Court grants the City's motion for summary judgment on Kohler's Count Six and Seven claims.

       3. Merits of Intentional Tort Claims as to Harrison

      Because the City and its employees are immune from Kohler's state-law claims of intentional infliction of emotional distress and invasion of privacy, the Court need address the merits of those claims only as to Harrison.

             a. Intentional Infliction of Emotional Distress

      Harrison argues that Kohler has not presented evidence adequate to establish her claim of intentional infliction of emotional distress. To do so, Kohler must show that:

> (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious.

*Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1132 (Ohio 10th Dist. Ct. App. 1991). The Court finds that Kohler has presented evidence sufficient to create a genuine issue of fact as to each element of her claim.

      First, Kohler has presented evidence that Harrison surreptitiously placed a running tape recorder next to the toilet in the women's restroom, where it could be discovered by a female in the process of using the restroom, as it was in fact found by Kohler. This constitutes evidence upon which a jury could rely to conclude that Harrison should have known his action could cause emotional distress. Second, this Court is not prepared to find as a matter of law that no jury could find Harrison's unusual act of tape recording a woman using the restroom to be outrageous. Third, the jury could infer from Kohler's

testimony that, after the incident, she had dreams involving Harrison and started seeing a psychologist for the first time shortly thereafter, that Harrison's action was causally related to Kohler's psychic injury. Finally, Kohler testified that she had disturbing dreams, that her work supervisor noticed a change in her demeanor, that she saw a psychologist, and that she was prescribed medication. The Court finds such evidence sufficient to create an issue of fact as to the severity of her injury.

On the facts Kohler has presented, Harrison's motion for summary judgment as to the Count Seven intentional-infliction-of-emotional-distress claim is denied.

b. Invasion of Privacy

Kohler's claim that Harrison unlawfully invaded her privacy is also premised on the May 2, 2002, incident in which Harrison placed a tape recorder next to the toilet in the Wapakoneta Police Department women's room. Harrison moves for summary judgment on the grounds that Kohler did not have a reasonable expectation of privacy in the bathroom stall, and that because the recorder did not pick up any "personal noises," Kohler's privacy was not actually invaded.

In order to prove her invasion of privacy claim, which is of the "intrusion upon seclusion" type, Kohler is "required to produce evidence that the area intruded upon was private, and that the intrusion . . . was unwarranted and offensive or objectionable to the reasonable man." *Contadino v. Tilow*, 589 N.E.2d 48, 53 (Ohio 1st Dist. Ct. App. 1990). "The invasion of the right of privacy may be defined . . . as the wrongful intrusion into one's private activities in such manner as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth*, 133 N.E.2d 340, 343 (Ohio 1956).

13

Harrison cites to several cases holding that the expectation of privacy in a toilet stall is not absolute, and that if an intruder can see what is allegedly secluded, there is no expectation of privacy. *United States v. Delaney*, 52 F.3d 182, 187-88 (8th Cir. 1995); *United States v. Billings*, 858 F.2d 617,  (10th Cir. 1998). In *Delaney*, the Eighth Circuit held that "an occupant of a toilet stall in a public rest room may have a reasonable expectation of privacy against clandestine police surveillance of the interior of the stall," but that the right is not absolute. *Delaney*, 52 F.3d at 188 (citing *United States v. White*, 890 F.2d 1012, 1015 (8th Cir. 1989)). The court found that a police officer did not improperly observe drug activity in a toilet stall where the defendant was, when he asked to use the restroom, "the subject of a lawful investigative stop," was instructed by the officer who escorted him there not to lock the door or flush the toilet, and was aware that the officer was just outside the stall. *Id*. The officer observed the activity through a gap in the stall's wall. As *Delaney* explained, in *White*:

> [T]he officer, unbeknownst to the defendant and without peering in a "knothole fashion" or looking under or over the stall door, observed the defendant from a distance by observing what she could through the gap between the bathroom stall door and the wall of the stall and by looking through the gap via reflections in the bathroom mirror. We held that although the defendant "could reasonably expect a significant amount of privacy in the bathroom stall, [that] expectation was not violated . . . because the design of the stall allowed the officer to make her observations without placing herself in any position that would be unexpected by an occupant of the stall."

*Id*. (quoting *White*, 890 F.2d at 1015). *Billings* held that a drug courier had no expectation of privacy in the open area below the stall walls, through which a police officer, standing where any patron of the restroom might, observed a drug parcel taped to the courier's leg. *Billings*, 858 F.2d at 617-18. Harrison argues on the basis of these cases that since any occupant of the restroom would be able to hear Kohler's activities inside the stall, she had no expectation of privacy as to such sounds.

14

Harrison's argument is unpersuasive for several reasons. First, the jury is entitled to infer that Harrison's tape recorder, from its vantage point inside the stall, had access to sounds that might not be perceived outside the stall. Second, the tape recorder did not make use of any built-in gaps in the stall's construction; its placement within the stall was the equivalent of "peering in a 'knothole fashion.'" Third, even if other women could have heard sounds from inside the stall had they entered the restroom, unlike the drug offenders in the cases Harrison cites, Kohler *thought* she was alone and that no one was present to perceive her activity. Finally, the cases Kohler cites holding that female prison inmates have a particular expectation of privacy around guards of the opposite sex, *Everson v. Michigan Department of Corrections*, 391 F.3d 737, 757 (6th Cir. 2004), and *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1986), indicate to the Court that it is appropriate to consider that even if Kohler did not expect privacy from other women in the women-only restroom, she reasonably expected her activities to be secluded from perception by men.

Harrison likewise cannot succeed on his argument that the tape recorder's failure to pick up any "personal noises" means that Kohler's privacy was not intruded upon and that her claim fails. *Geraci v. Conte*, No. 72440, 1998 Ohio App. LEXIS 2727, at *8-9 (Ohio 8th Dist. Ct. App. 1998). In *Geraci*, a high school principal invited students to his home for swimming parties and secretly videotaped them changing clothes. *Id*. at *3. The Ohio Court of Appeals stated:

> Our understanding of the case law as it applies to the intrusion-upon-seclusion branch of this tort allows this court, by analogy, to find that appellant, and those class members she seeks to represent, need not allege that she and the others were actually spied upon in order to defeat a motion to dismiss for failure to state a claim. . . . The invasion consists solely of an intentional interference with the person's interest in solitude or seclusion.

*Id*. at 8. The court cited with approval to numerous cases from other jurisdictions holding the use or installation of hidden listening devices or cameras was enough to intrude on the seclusion of another, whether or not those devices were actually used. *Id*. at 8-9.

Kohler has therefore established an intrusion into a private area. The question remains whether the intrusion here, the placement of a hidden tape recorder next to a women's room toilet, was unwarranted and offensive or objectionable to the reasonable person. To ask the question, it seems to the Court, is to answer it. Certainly the jury could so conclude. Harrison's motion to dismiss Kohler's Count Six invasion of privacy claim is denied.

*D. Sexual Harassment Claims*

Kohler's allegations of sexual harassment are relevant to her Count One equal protection claim, her Count Two Title VII claim, and her Count Five Ohio Revised Code § 4112.02 claim. The Court first must consider whether Chapter 2744 immunity applies to Kohler's Count Five Ohio claim. The Court determines that it does not, because that claim relates to the conditions of her employment.

1. Municipal Immunity as to Ohio Revised Code § 4112.02 Sex Discrimination Claim

Plaintiff does not challenge Defendant's contention that no § 2744.02(B) exceptions apply. Moeover, Defendant's contention is correct, since the claim is not one for negligence and because § 4112.02 does not expressly impose liability on political subdivisions. *Howard v. City of Beavercreek*, 276 F.3d 802, 807-08 (6th Cir. 2002).

However, Kohler's claim of sexual harassment relates to the conditions of her employment and is therefore exempt from municipal immunity. Ohio Rev. Code § 2744.09(C) (stating that immunity does not apply to civil actions by employees against their political-subdivision employers "relative to wages,

16

hours, conditions, or other terms of his employment"); Ohio Rev. Code § 4112.02(A) (prohibiting discrimination "with respect to hire, tenure, terms, conditions, or privileges of employment"); *Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 732 (Ohio 2000) (noting that those alleging sexual harassment must show harassing conduct so severe or pervasive as to alter the "conditions" of the claimant's employment); *City of Whitehall v. Ohio Civil Rights Comm'n*, 656 N.E.2d 684, 687 (Ohio 1995) (holding, where the claimant alleged racial and sexual discrimination, that political subdivision immunity was inapplicable under § 2744(B) and (C)).

The Court notes that the Ohio Court of Appeals has stated that the language of § 2744.09(C) "tracks the language used in the Ohio Public Employees Collective Bargaining Act," and that "'conditions' should therefore be given its technical meaning" as developed in that context, in which "conditions of employment are those conditions that employees must satisfy in order to maintain their employment rather than the physical conditions in the workplace." *Terry v. Ottawa County Bd. Of MRDD*, 783 N.E.2d 959, 964-65 (Ohio 6th Dist. Ct. App. 2002) (citing *Fabian v. City of Steubenville*, No. 00 JE 33, 2001 Ohio App. LEXIS 4533, at *11-12). However, the Ohio Supreme Court's determination in *City of Whitehall v. Ohio Civil Rights Commission*, coupled with the fact that § 4112.02 also employs similar language, counsels this Court against construing the word "conditions" in § 2744.09 so narrowly as to find the City immune from Kohler's sexual harassment claim.

2. Merits of Sexual Harassment Claims

Kohler alleges that Harrison sexually harassed her, creating a hostile environment that the City, Wittwer, and Katterheinrich promoted, condoned, or tolerated. Kohler's Count Two Title VII claim against the City and her Count Five Ohio Revised Code § 4112.02 claim against all defendants are

17

premised on this allegation, and it forms part of her Count One § 1983 claim against all Defendants, which also requires Kohler to show that the Defendants acted under color of state law.

Sex discrimination claims brought under Title VII and § 4112.02 have substantially identical elements, and the showing Kohler must make to recover for sexual harassment in violation of the equal protection clause under § 1983 also "mirrors" the showing she must make under Title VII. *Knox v. Neaton Auto Parts Mfg.*, 375 F.3d 451 (6th Cir. 2004) ("Because the prima facie case requirements are essentially the same under the Ohio Revised Code § 4112.02 . . . Knox's federal and state-law claims of gender discrimination may be disposed of together."); *Little Forest Med. Ctr. Of Akron v. Ohio Civil Rights Comm'n*, 575 N.E.2d 1164, 1167 (Ohio 1991) ("[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964 . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112."); *Smith v. City of Salem*, 378 F.3d 566, 576-77 (6th Cir. 2004) ("'[T]he showing a plaintiff must make to recover . . . . under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983.'") (quoting *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988).

Though the City failed to assert it as a ground for summary judgment, Kohler's Title VII claim is barred by the statute of limitations. 42 U.S.C. § 2000e-5(e) requires victims of discrimination to file a charge with the EEOC within either 180 or 300 days, depending on whether they also file with a state or local agency. The 180- or 300-day time period "is akin to a statute of limitations," *Brown v. Hyperion Seating Corp.*, No. 98-6373, 1999 U.S. App. LEXIS 24305, at *5 (6th Cir. Sept. 27, 1999), and "normally no plaintiff can recover for any employment discrimination that happened more than 300 days before she brings a charge," *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46 (6th Cir. 1994).

Here, Kohler filed her charge of discrimination with the EEOC on August 20, 2003, more than a year after the last incident she cites in support of her hostile-environment claim. Even under the longer, 300-day period, Kohler's Title VII sexual harassment claim would be time-barred. Additionally, the Court determines, below, that Kohler's § 1983 claims fail because Harrison did not act under color of state law, and there is also no basis for municipal liability. Of course, because all of Kohler's sexual harassment claims draw upon the same analysis, the Court will necessarily evaluate the merits of Kohler's Title VII claim and the sex discrimination elements of her equal protection claim as it considers her § 4112.02 claim. Under that analysis, summary judgment in favor of the Defendants is appropriate.

To establish her hostile-work-environment claims, Kohler must show that:

(1) she is a member of a protected class,
(2) she was subjected to unwelcome sexual harassment,
(3) the harassment was based on her sex,
(4) the harassment created a hostile work environment, and that
(5) the employer is vicariously liable.

*Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). Harrison, the City, Wittwer, and Katterheinrich move for summary judgment on the ground that Kohler is unable to show that the harassment created a hostile work environment or that her employer is vicariously liable.

a. Hostile Work Environment

It is "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'[that] Title VII is violated."  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal citations omitted). In making this determination, the Court looks to the totality of the circumstances and considers

19

such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "In establishing the requisite adverse effect on work performance . . . the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job." *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1988).

The Sixth Circuit has instructed that "[t]he harassment should be ongoing, rather than a set of isolated or sporadic incidents." *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005). "The plaintiff must show that the working environment was both objectively and subjectively hostile." *Id*. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

The requirement that the environment be subjectively hostile means that Kohler may not premise a harassment claim on conduct of which she was not aware.[2] *See Wanchik v. Great Lakes Health Plan, Inc.*, 6 Fed. Appx. 252, 262 (6th Cir. 2001). Additionally, because the alleged incidents of sexual harassment were isolated and unrelated, and therefore not part of a "continuing violation," the "discrete

---

[2]

Therefore, Kohler's contentions regarding Harrison's invocation of the Fifth Amendment are inapposite.

20

acts that fall within the statutory time period do not make timely acts that fall outside the time period."
*Amtrak v. Morgan*, 536 U.S. 101, 107-08, 112 (2002). Section 4112.02 is subject to a six-year
statute of limitations. *Cosgrove v. Williamsburg of Cincinnati Management Co.*, 638 N.E.2d 991,
997-99 (1994) (Resnick, J., concurring). Kohler filed her Complaint on March 23, 2004. The Court will
therefore limit its analysis to incidents occurring after March 23, 1998 that Kohler perceived when they
occurred in her workplace.

The incidents Kohler has identified in her opposition to the Defendants' motion that meet those
criteria are: (1) her receipt of four e-mails from Harrison in February and March of 2002[3]; (2) Harrison's
early 2002 comment that one could purchase used women's underwear on the Internet; (3) her May 2,
2002 women's room discovery of a running tape recorder that had not recorded her; and (4) Harrison's
forwarding of an old, official photograph of Kohler to several e-mail recipients later on the same day.
Kohler did not complain to anyone about the e-mails or Harrison's comment. When she told City
supervisors about the tape recorder, they initially decided to place Harrison on administrative leave, but
instead accepted his retirement, and referred the matter to state investigators.

Considering the totality of those circumstances the Court concludes that no jury could find that
Kohler's work environment was *permeated* with "discriminatory intimidation, ridicule, and insult," that
was so severe or pervasive as to alter the conditions of Kohler's working environment. First, the conduct
at issue was isolated and sporadic, not ongoing. It was not physically threatening. While finding the tape
recorder understandably shocked Kohler, the tape contained nothing that could be humiliating.

---

[3]

The e-mails are described above in Footnote 1.

Importantly, while Kohler's fear that there were other, similar incidents she did not know about affected her mentally and emotionally, there is no evidence that any of the incidents Kohler perceived at work unreasonably interfered with her work performance. Throughout the incidents, Kohler testified, she continued to do her job and do it well.

"Title VII was not meant to create a 'general civility code,' and the 'sporadic use of abusive language, gender-related jokes, and occasional teasing' are not sufficient to establish liability." *Clark*, 400 F.3d at 352. The Sixth Circuit has found in several cases that isolated and sporadic sexual jokes, on the order of the e-mails Harrison sent in February and March, 2002, even coupled with an act of battery or physical touching, which was absent here and is certainly more severe than the tape-recorder incident, did not amount to conduct severe or pervasive enough for the plaintiff's sexual harassment claim to survive summary judgment. *See e.g.*, *Gwen v. Reg'l Transit Auth.*, 7 Fed Appx. 496, 502 (6th Cir. 2001); *Burnett v. Tyco*, 203 F.3d 980, 982 (6th Cir. 2000); *Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir. 2000); *Stacy v. Shoney's, Inc.*, No. 97-5393, 1998 U.S. App. LEXIS 6659, at *1-3 (6th Cir. 1998).

In *Gwen*, the plaintiff's co-worker twice exposed his genitals to her and approached her while making "rude and inappropriate comments." 7 Fed Appx at 498. The plaintiff saw a psychologist because of emotional trauma brought on because of the sexual assault. *Id*. at 499. The employer disciplined but did not fire the offending employee when the plaintiff reported the incident. The Sixth Circuit found that the plaintiff had not shown that the conduct unreasonably interfered with her work performance and created a hostile working environment, and cited to a similar but more egregious case in which a co-worker "'exposed his genitals to plaintiff, threatened to force plaintiff to engage in oral sex

with him, and "stuck a ruler up Plaintiff's buttocks" against plaintiff's will,'" but in which the Sixth Circuit had also found there was no hostile environment. *Id*. at 501 (quoting *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996)).

In *Burnett*, a supervisor placed a pack of cigarettes under the plaintiff's bra strap while telling a story about a woman and made two other suggestive remarks to the plaintiff. 203 F.3d at 981. The Sixth Circuit held, "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment." *Id*. at 985. In *Bowman*, the female supervisor had rubbed the male plaintiff's shoulder, grabbed his buttocks, touched his chest, propositioned him, and threatened him. 220 F.3d at 458-59. Though the Sixth Circuit said that "three of the alleged incidents in this case 'were not merely crude, offensive, and humiliating, but also contained an element of physical invasion,'" and found the allegations to be "serious," it concluded that they were not "severe or pervasive." *Id*. at 464 (quoting *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999)). In *Stacy*, the plaintiff's supervisor made sexually suggestive comments to her continuously over a two-month period, and in one incident touched her breast, but the Sixth Circuit found the incidents did not amount to a hostile work environment. 1999 U.S. App. LEXIS 6659 at *3-4, 10.

Finally, in an Ohio case, the Ohio Court of Appeals found that the defendant's showing coworkers a photo of a naked, overweight woman while asking them whether it resembled the plaintiff to be "deplorable" but not "sufficiently severe or pervasive harassment to be actionable under Chapter 4112." *Hale v. City of Dayton*, No. 18800, 2002 Ohio App. LEXIS 474, at *15 (Ohio 2d Dist. Ct. App. Feb. 8, 2002).

Here, Harrison's placement in the women's bathroom of a tape-recorder that failed to record any "personal noises" did not rise to the level of the physical touching present in several of the cases cited above. It was a single incident that was certainly "serious," "deplorable," and, like the incident of exposure in *Gwen*, it was shocking, perhaps a basis for criminal or tort liability, and the impetus for psychiatric treatment. However, as in the above cites cases, which all involved isolated jokes coupled with similarly or more severe incidents, the tape-recorder incident combined with the isolated jokes and comment and the non-sexual e-mail of Kohler in uniform, did not create an environment permeated with severe or pervasive harassment that unreasonably interfered with Kohler's job duties. After considering the totality of the circumstances, the Court therefore determines that summary judgment for defendants on Kohler's sexual harassment claims is appropriate on that ground. This is especially so regarding Kohler's § 1983 claim, the two-year statute of limitations of which excludes the e-mails and the Internet comment from consideration. *Crow v. Ohio Dep't of Rehab. & Corr.*, No. 98-4024, 1999 U.S. App. LEXIS 22455, at *17 (6th Cir. Sept. 10, 1999).

  b. Vicarious Liability

The City is also entitled to summary judgment on Kohler's sexual harassment claims on the ground that Kohler cannot show it is vicariously liable for Harrison's acts. "An employer *is* vicariously liable for an actionable hostile environment created by a supervisor," unless the employer can show by a preponderance of the evidence that both prongs of the affirmative defense set out in *Faragher v. City of Boca Raton* apply. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 348 (6th Cir. 2005). That affirmative defense requires the employer to show that: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee

24

unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. 775, 807 (1998). Under the first prong, "'once an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it. . . . [R]egardless of whether the victimized employee actively complained, prong one of the defense ensures that an employer will not escape vicarious liability if it was aware of the harassment but did nothing to correct it or prevent it from occurring in the future.'" *Clark*, 400 F.3d at 349 (quoting *Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997)).

Here, as soon as the City learned of the alleged harassment, it took steps to eliminate it, including referring the matter to BCI for an investigation, and securing the offender's removal from the workplace. The *Faragher* affirmative defense therefore applies.

Because Kohler cannot show that the conduct she complains of was severe or pervasive and, additionally, cannot show that the City is vicariously liable, the Defendants are entitled to summary judgment on her Count One equal protection claim, Count Two Title VII claim, and Count Five Ohio Revised Code § 4112.02 claim. The independent entitlement of Defendants to summary judgment on Count One on § 1983-related grounds is discussed below.

*E. Section 1983 Claims*

Kohler's § 1983 claims against both Harrison and the City and its employees fail.

1. Claims Against Harrison

Kohler's § 1983 claims are premised on her allegation that Harrison violated her constitutional right to equal protection by creating a sexually hostile environment, and violated her right to substantive due process by recording her in the bathroom, while acting under color of state law. Though Kohler may

25

not pursue a Title VII claim under § 1983 against Harrison, because he is an individual, she may press

her claim of sexual harassment in violation of the equal protection clause against an individual. *Molnar v.*

*Booth*, 229 F.3d 593, 599, 603 (7th Cir. 2000).

Section 1983 claims brought in Ohio are subject to a two-year statute of limitations. *Crow v.*

*Ohio Dep't of Rehab. & Corr.*, No. 98-4024, 1999 U.S. App. LEXIS 22455, at *17 (6th Cir. Sept.

10, 1999). Kohler argues that alleged instances of sexual harassment that occurred more than two years

before she filed her Complaint are admissible as part of a "continuing violation" under *Amtrak v.*

*Morgan*, 536 U.S. 101, 107-08 (2002). However, as the Supreme Court in that case explained,

"discrete acts that fall within the statutory time period do not make timely acts that fall outside the time

period." *Id*. at 112. Here, there is no evidence that the isolated incidents Kohler alleges were in any way

related. Therefore, Kohler may premise her claim only on incidents occurring after March 23, 2002. The

only actions by Harrison occurring during that time period were those of May 2, 2002, when Harrison

attempted to record Kohler in the restroom and circulated an e-mail of an old police department

photograph of Kohler in uniform.

To prevail on her claims against Harrison, Kohler must show that he acted under color of state

law. As the Supreme Court has explained:

> To state a claim under § 1983, a plaintiff must allege the violation of a right secured by
> the Constitution and laws of the United States, and must show that the alleged
> deprivation was committed by a person acting under color of state law. . . . The
> traditional definition of acting under color of state law requires that the defendant in a §
> 1983 action have exercised power "possessed by virtue of state law and made possible
> only because the wrongdoer is clothed with the authority of state law." . . . [G]enerally, a
> public employee acts under color of state law while acting in his official capacity or while
> exercising his responsibilities pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 48-50 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

The Court begins its analysis by noting that the rather unique set of facts presented here differs in an important way from the typical sexual harassment case in which a state-employee supervisor makes overt remarks, jokes, or overtures, or engages in physical touching of a state employee under his command and thereby abuses power granted to him by the state, as in *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997), cited by Kohler. Unlike the typical case, Harrison's surreptitious tape recording of Kohler was in no way connected to or aided by his status as her supervisor. The Court finds the Third Circuit's statement in *Bonenberger* to be applicable here:  "we do not suggest that all acts of an on-duty state employee are state action for purposes of section 1983. . . . [A] state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law," *Id*.  There is no evidence indicating that Harrison acted in his official capacity or exercised responsibilities given him by state law when he secretly attempted to record Kohler. Harrison's prurient act had purely private motives and was unconnected to the execution of his official duties. Harrison therefore did not act under the color of law when he attempted to tape record Kohler, and that incident cannot form the basis of a § 1983 claim.[4]

---

[4]

While Kohler points out that Harrison did not specifically argue in his motion for summary judgment that he did not act under color of state law, he did move for summary judgment on Kohler's § 1983 claims, of which action under color of state law is a requisite element. Kohler fully addressed the issue in her Response, and Harrison presented rebuttal arguments in his Reply. The issue is therefore properly before the Court.

While Harrison's e-mail containing a photograph of Kohler, sent from the police chief's e-mail address through the city's e-mail system, likely was an action taken under color of state law, as a matter of law that single act is neither severe nor pervasive enough to support a violation of the equal protection clause. *See Smith v. City of Salem*, 378 F.3d 566, 576-77 (6th Cir. 2004) (holding that a claim of sex discrimination in violation the equal protection clause brought under § 1983 shares the same elements as those constituting a similar claim under Title VII of the Civil Rights Act of 1964); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'") (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).

For the foregoing reasons, and because, as discussed above, Harrison's act of recording Kohler also fails to meet the requirements for a claim of sexual harassment, the Court grants Harrison's motion for summary judgment as to Kohler's Count One and Three § 1983 claims.

2. Claims Against the City

Kohler states in her Response to the City's motion that she does not assert a § 1983 claim against Wittwer and Katterheinrich in their individual capacities. The liability she seeks to impose under § 1983 is municipal liability, under three distinct theories: (1) that Harrison was a "policymaker" and that his actions therefore automatically impose liability on the city; (2) that the City was deliberately indifferent to its own sexual harassment policy; and (3) that the City ratified Harrison's constitutional violations. The Court notes its conclusion, above, that Kohler cannot prove the requisite elements of sexual harassment in regards to her Count One equal protection claim. However, even if she could, neither that claim nor

Kohler's Count Three substantive due process claim could survive under any of the three articulated theories.

> a. Policymaker

Kohler claims the City is liable because Harrison's acts of sexual harassment, including placing a tape recorder in the women's bathroom, amounted to official city policy due to Harrison's position as a "policymaker."

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Id*. at 690. That official policy need not be embodied in an official ordinance; it may result from a "custom or usage with the force of law." *Id*. (internal quotation omitted). *Id*. at 691.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered*.'" *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 515 (6th Cir. 1991) (quoting *Pembaur*, 475 U.S. at 481) (emphasis added).  The Seventh Circuit has explained, "[t]hat a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.' . . . Unless today's decision ought to govern tomorrow's case under a law or a custom with the force of law, it cannot be said to carry out the municipality's policy." *Auriemma v. Rice*, 957 F.2d 397,

29

400 (7th Cir. 1992). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id*. Moreover, a municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

Here, Harrison's acts on May 2, 2002 are the only bases of Kohler's equal protection claim that occurred within the statute of limitations. His act of tape recording Kohler is the sole basis for her substantive due process claim. Kohler cannot show that Harrison had authority to establish a municipal policy that her bathroom activity would be tape recorded for his own, personal use. Harrison's unauthorized, private action frustrated, rather than implemented the City's stated policy regarding appropriate activity in the workplace. His action was not taken in the course of any official function, as were the individual acts found to represent municipal policy in the Sixth Circuit cases Kohler cites. *See Monistere v. City of Memphis*, 115 Fed. Appx. 845, 848 (6th Cir. 2004) (police sergeant ordered strip search as part of official investigation); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 992 (6th Cir. 1994) (police chief authorized warrantless search of house).

Additionally, as soon as the City's officials learned about Harrison's actions, they decided to suspend him, accepted his resignation when it was proffered, and referred the matter to the state for investigation. Harrison's acts were therefore not "final and unreviewable" and were subject to the City's superior official policies. Kohler cannot maintain her claim that Harrison's acts rose to the level of official policy.

      b. Deliberate Indifference

30

Plaintiff claims the City had a custom of deliberate indifference to its own sexual harassment policy and that that indifference caused her injury. "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under Monell when it can be said that the failure amounts to '"deliberate indifference" towards the constitutional rights of persons in its domain.'"

*Daskalea v. District of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 & n.7). However, a municipality is only liable for its policy or custom of deliberate indifference "when the municipality's 'policy or custom . . . inflicts the injury.'" *Id*. (quoting *Monell*, 436 U.S. at 694) (alteration in *Daskalea*).

Here, the evidence shows that Harrison was not only aware of the City's sexual harassment policy, he worked with outside consultants to develop a similar policy for the Police Department. Additionally, Kohler promptly complained of the offending incidents, and the City, through Mayor Wittwer and Director Katterheinrich, took prompt remedial action, including referring the matter to BCI, deciding to suspend Harrison, and accepting his letter of retirement, which assured his removal from the premises. Harrison, the offender in this case, was familiar with the policy, and Kohler, the victim, reported its violation. On that record, no reasonable jury could find that any failure of the city to train employees regarding its sexual harassment policy or to publicize the policy caused Kohler's injury.

c. Ratification

In *Leach v. Shelby County Sheriff*, the Sixth Circuit considered a policy or custom that had two aspects: "first, the Sheriff failed to supervise his employees adequately when he knew or should have known of the danger that inmates such as Leach were likely to receive inadequate care and second, the Sheriff failed to investigate this incident and punish those responsible, in effect ratifying their actions." 891 F. 2d 1241, 1247 (6th Cir. 1989). The Sixth Circuit found the "ratification" to be evidence of deliberate indifference. *Id*. at 1248; *see also Marchese v. Lucas*, 758 F.2d 181, 182, 188 (6th Cir. 1985).

Here, the City referred the matter to the state for investigation promptly, and accepted Harrison's retirement in lieu of suspending him, removing him from the workplace. Therefore, Kohler cannot claim the city ratified his actions by failing to investigate and punish those responsible for a constitutional violation.

In light of the foregoing, the Court concludes Kohler cannot maintain her § 1983 actions against the city on any theory, and that the City is entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, the motion of Defendants the City of Wapakoneta, Donald R. Wittwer, and Rex Katterheinrich for summary judgment (Doc. No. 46) is granted. The Motion of Defendant David L. Harrison for summary judgment (Doc. No. 38) is denied as to Counts Six and Seven but otherwise is granted. Though the only remaining claims are Plaintiff's state-law claims against Defendant Harrison for intentional infliction of emotional distress and invasion of privacy, the Court will retain jurisdiction under 28 U.S.C. § 1367.

IT IS SO ORDERED.

s/ *David A. Katz*

DAVID A. KATZ
SENIOR U. S. DISTRICT JUDGE